THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAKERAH HUNTER, | ) | |
| | ) | |
| *Plaintiff*, | ) | No. 24 C 2529 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CARL BUDDIG AND COMPANY, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

On June 11, 2024, Plaintiff Shakerah Hunter filed her First Amended Complaint against Defendants Carl Buddig and Company and Nexus Payroll, Inc. (Dkt. 30). Hunter brought eight counts against the joint employers for events that occurred during her approximate three-month placement at Carl Buddig's food processing facility, in violation of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1981. (*Id.*) Nexus now moves to dismiss Counts I–IV and VI[1], (Dkt. 34), and Carl Buddig moves to dismiss Counts II–IV, VI, and VIII, (Dkt. 35). For the following reasons, Nexus and Carl Buddig's motions to dismiss [34] [35] are granted in part.

### BACKGROUND

Defendants Carl Buddig and Company and Nexus Payroll, Inc. jointly employed Plaintiff Shakerah Hunter at Carl Buddig's food processing facility beginning November 1, 2023. (Dkt. 30 ¶¶ 11, 17–19, 22, 26). Nexus provides staffing services to companies such as Carl Buddig. (*Id.* at ¶ 19). In that capacity, Nexus hired and assigned Hunter to Carl Buddig, paid Hunter, and checked

---

[1] Though Nexus implies they seek to dismiss the First Amended Complaint in full, (*see* Dkt. 34 at 2, 3, 12), in substance they argue Hunter failed to state a claim as to Counts I–IV, and VI.

1

her in and out of her shifts. (*Id.* at ¶¶ 20–21, 25). For their part, Carl Buddig trained, supervised, assigned Hunter work, as well as controlled her compensation and schedule. (*Id.* at ¶¶ 25, 27–31).

Hunter has high blood pressure. (*Id.* at ¶ 34). High blood pressure can lead to symptoms such as headaches, dizziness, chest pain, nausea, and vomiting. (*Id.*) To manage her high blood pressure, Hunter takes medication that causes frequent urination. (*Id.* at ¶ 35). Hunter informed both Nexus and Carl Buddig of her high blood pressure and need to access a bathroom at the start of her employment. (*Id.* at ¶¶ 36–37).

On January 18, 2024, Hunter asked her supervisor Brenda to take a restroom break. (*Id.* at ¶¶ 55–56). Brenda "scream[ed] at Hunter and stated the bathroom was "off limits" before noting "there was always an issue with 'you people.' " (*Id.* at ¶ 57). In her First Amended Complaint, Hunter characterizes this incident as Defendants' denial of a request for a reasonable accommodation and failure to engage in the interactive process pursuant to her disability of high blood pressure. (*See id.* at ¶¶ 59, 86).

Moreover, Hunter is African American. (*Id.* at ¶ 41). Hunter outlines multiple instances of perceived racial harassment perpetrated by her supervisor, Brenda, including the January 18, 2024 bathroom denial. In general, Hunter notes that Brenda treated Hispanic employees better than African American employees, giving African Americans the "cold shoulder" and regarding them as "unwelcome 'others.' " (*Id.* at ¶ 47). For example, on January 7, 2024 Brenda "bullied" Hunter out of the lunch cafeteria after "star[ing]" at her and asking if her lunch was over. (*Id.* at ¶¶ 43–45). The next day, Brenda said to Hunter: "Someone told me you didn't wash your hands. So you people don't wash your hands?" (*Id.* at ¶ 49).

Hunter reported Brenda's comment to Carl Buddig's human resources, who did not investigate and told her that "they were aware of Brenda's racist behaviors" yet did not have

2

sufficient reports to act. (*Id.* at ¶¶ 51–52, 54). On January 18, 2024, Hunter also reported "discrimination and harassment" to Javier, Nexus's onsite manager. (*Id.* at ¶¶ 60–61). Javier "berate[d]" Hunter and shared that he was also aware of Brenda's "racism" since "[Nexus] [is] getting rid of all you people on first shift"; or in other words, other African American employees. (*Id.* at ¶¶ 62–63). After Hunter spoke with Javier, he took her badge. (*Id.* at ¶ 64). That same day, Carl Buddig suspended and terminated Hunter. (*Id.* at ¶¶ 64–65). Nexus then assigned Hunter to "an undesirable location due to the travel required, and the type of work." (*Id.* at ¶ 66). Hunter alleges that Nexus's undesirable assignment constituted a termination, or constructive termination, from her role at Nexus. (*Id.* at ¶ 68).

On February 19, 2024, Hunter filed a charge of discrimination—which she later amended—with the Illinois Department of Human Rights ("IDHR"), alleging racial discrimination, disability discrimination, and retaliation. (Dkts. 30-1, 30-2). In March 2024, Hunter received a Notice of Right to Sue from the Equal Employment Opportunity Commission ("EEOC"). (Dkts. 30-3, 30-4). In her EEOC charge, Hunter wrote that she was "subjected to harassment, discrimination, and retaliation on the basis of [her] race and disability." (Dkt. 30-2 at 2). Hunter then provided a "non-exhaustive list" of disability and race-based discrimination, harassment, and retaliation that included the January 7, 2024, January 8, 2024, and January 18, 2024 incidents with her supervisor Brenda. (*Id.*) In describing the January 18, 2024 restroom interaction, Hunter wrote that she "had to use the restroom" and "[a]ccess to a restroom is vital due to my disability." (*Id.*)

Hunter now brings eight counts against Nexus and Carl Buddig, including disability discrimination, failure to accommodate, harassment, and retaliation in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*. (Counts I–IV); racial discrimination in

3

violation of 42 U.S.C. § 1981 (Count V); and racial discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Counts VI–VIII). Nexus moves to dismiss Counts I–IV and VI of Hunter's First Amended Complaint for failure to exhaust administrative remedies and failure to state a claim. (Dkt. 34). Carl Buddig moves to dismiss Counts II– IV, VI, and VIII for substantially similar reasons. (Dkt. 35).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). The Court accepts the well-pleaded factual allegations in the plaintiff's complaint as true, "drawing all reasonable inferences in [her] favor." *Id.* (citation omitted). The Court "also consider[s] any documents attached to and integral to the complaint as part of the [plaintiff's] allegations." *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 878 (7th Cir. 2022). Yet, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough. *Oakland Police & Fire Ret. Sys. v. Mayer Brown, LLP*, 861 F.3d 644, 649 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The complaint's factual content must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## DISCUSSION

### I. Failure to Exhaust Administrative Remedies

#### a. Failure to Accommodate

Before filing suit under Title VII or the ADA, a plaintiff must file an EEOC charge within 300 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1). Further, a plaintiff is limited to bringing claims "like or reasonably related to the allegations of the charge and growing out of such allegations." *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019) (quoting *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005)). The exhaustion requirement serves two purposes: (1) giving the EEOC and the employer a chance to settle the matter; and (2) giving the employer notice of the challenged conduct. *Chaidez*, 937 F.3d at 1004. At minimum, the charge and the complaint must "describe the *same conduct* and implicate the *same individuals*." *Id.* (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (emphasis in original)). Or in other words, there must be a "factual relationship" between the two. *Whitaker v. Milwaukee County*, 772 F.3d 802, 812 (7th Cir. 2014).

In comparing Hunter's EEOC charge with her First Amended Complaint, the Court "look[s] to the substance of the charges, not merely whether a particular box was checked on the EEOC form." *Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 953 (7th Cir. 2009); *Rowlands v. United Parcel Serv.–Fort Wayne*, 901 F.3d 792, 798 (7th Cir. 2018) (noting that a plaintiff need not expressly state "failure to accommodate" in the EEOC charge to exhaust administrative remedies). Yet, a plaintiff does not exhaust a failure to accommodate claim merely by including a disability discrimination claim in an EEOC charge. *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999); *Whitaker*, 772 F.3d at 813 ("[O]ne cannot expect a failure to accommodate claim to develop from an investigation into a claim that an employee was terminated because of a

disability."). Instead, a failure to accommodate claim may be properly exhausted "when the facts in the EEOC charge are adequate to describe a failure to accommodate claim." *Gonzales v. Ferrara Candy Co.*, 2024 WL 640954, at *4 (N.D. Ill. Feb. 15, 2024) (citing *Rowlands*, 901 F.3d at 800). To establish a failure to accommodate claim, the plaintiff must show that: (1) she was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability. *EEOC v. AutoZone, Inc.*, 809 F.3d 916 (7th Cir. 2016).

Here, Hunter failed to state facts in her EEOC charge supporting a failure to accommodate claim. First, her EEOC charge states that she has a "physical impairment that substantially limits major life activities," without identifying her disability or the major life activity it affects. She does not state that Nexus or Carl Buddig were aware of her disability, that she requested a reasonable accommodation, or that they failed to engage in an interactive accommodation process. Rather, Hunter solely notes that on January 18, 2024 she had to use the restroom, which is "vital due to [her disability]" and her supervisor Brenda informed her the restroom was "off limits." (Dkt. 30-2 at 2). Because she was frustrated with the "racial discrimination" she faced, Hunter reported the conduct to Nexus. (*Id.*)

Based on these facts in her EEOC charge, the Court cannot conclude that an investigation into the January 18, 2024 incident would put the Defendants on notice of a failure to accommodate claim. *See Gebre v. PIL II, L.P.*, 2018 WL 3831521, at *4 (N.D. Ill. Aug. 13, 2018) (finding failure to exhaust where plaintiff alleged disability discrimination and a request for reasonable accommodation, but not defendant's failure to accommodate). As further support, the Court looks to *Rowlands v. United Parcel Service – Fort Wayne*, 901 F.3d 792, 799 (7th Cir. 2018). There, the Seventh Circuit considered in part whether a plaintiff sufficiently stated a failure to accommodate

6

claim. The court found that while the plaintiff failed to articulate a failure to accommodate claim in her amended complaint, her EEOC charge stated that she "tried to engage in the interactive process and tried to get reasonable accommodations (such as wearing her knee brace, eliminating the existence of the cord which Complainant ultimately tripped over causing more serious injuries to her knee)." *Id.* at 799. Because the plaintiff clearly included a failure to accommodate claim in her EEOC charge, which was then incorporated in her amended complaint, the defendant was on notice of the failure to accommodate claim. *Id.* at 800.

In contrast to the plaintiff in *Rowlands*, Hunter does not mention that she requested a reasonable accommodation, attempted to engage in an interactive process, or that the Defendants failed to make sure accommodations in her EEOC charge—rather, she alleges that Defendants discriminated against her by yelling about using the bathroom on one particular date and retaliated against her when she reported the "racial discrimination." (Dkt. 30-2 at 2). Ultimately, Hunter's EEOC charge fails to plead facts that would put Defendants and the EEOC on notice of a failure to accommodate claim. And in any event, as outlined *supra* pp. 8–10, this claim would fail for failure to plead that Hunter was disabled. Hunter has not exhausted this claim, so it is dismissed without prejudice. *McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022).

    b. **Retaliation**

On the other hand, Hunter exhausted her administrative remedies as to her retaliation claims (Counts IV and VIII). Hunter wrote in her EEOC charge that on January 18, 2024, after reporting issues to Human Resources on two occasions, Nexus took away her badge and sent her home. (Dkt. 30-2 at 2). Carl Buddig then suspended and terminated her on or about the same day. (*Id.*) This is sufficient to put Defendants on notice of her retaliation claims that implicated the "same conduct" and "same individuals." *Chaidez*, 937 F.3d at 1004.

II.  ADA Claims

To assert her disability-related discrimination counts (Counts I–III), Hunter must plead facts supporting that she is disabled within the meaning of the ADA. Nexus moves to dismiss all three counts, (Dkt. 34 at 7), while Carl Buddig only moves to dismiss Counts II and III, (Dkt. 36 at 2 n.1, 3).

The ADA bars discrimination against a qualified person "on the basis of disability." *Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1053 (7th Cir. 2024) (citing 42 U.S.C. § 12112(a)).[2] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . ." 42 U.S.C. § 12102(1). A non-exhaustive list of major life activities includes sleeping, walking, breathing, communicating, working, or the operation of major bodily functions. 42 U.S.C. § 12102(A), (B).

In her First Amended Complaint, Hunter states that she has high blood pressure that "substantially limits one or more major life activities." (Dkt. 30 ¶¶ 33–34). She notes that high blood pressure can "manifest in symptoms" such as headaches, dizziness, chest pain, nausea, and vomiting. (*Id.* at ¶ 34). Hunter takes medication for her high blood pressure, which causes frequent urination, and "performed or could have performed the essential functions of [her] job with or without accommodations." (*Id.* at ¶¶ 35, 38).

High blood pressure may give rise to a substantial limitation on a major life activity. In *Gogos v. AMS Mechanical Systems, Inc.*, a plaintiff alleged that he suffered an episode of very high blood pressure, which impaired his circulatory function and caused intermittent vision loss. 737 F.3d 1170, 1173 (7th Cir. 2013). His employer later fired him for leaving work to seek treatment

---

[2] For disability discrimination, harassment, and failure to accommodate, Hunter must be disabled within the meaning of the ADA. *See Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011).

8

during that episode. *Id.* at 1171. The Seventh Circuit found that the plaintiff sufficiently alleged a disability since he stated his high blood pressure spike and vision loss impaired "two major life activities: his circulatory function and eyesight." *Id.* at 1173.

Glaringly absent here, however, is any mention of how Hunter's high blood pressure affects any of her major life activities. True, the ADA's implementing regulation lists hypertension as an example of an impairment that may be episodic. *Gogos*, 737 F.3d at 1173 (citing 29 C.F.R. Pt. 1630)). But not every impairment constitutes a disability under the ADA. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011); *see* 28 C.F.R. § 35.108(d)(v) ("An impairment does not need to prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section."). And Hunter does not allege that she was having a high blood pressure episode during the bathroom incident—or any time—while employed by Defendants.

At this stage, Hunter does not set forth details to plausibly allege her high blood pressure substantially affects one of her major life activities, rendering her disabled under the statute. *See Cassimy v. Bd. of Educ. of Rockford Public Schs., Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006) ("Not every medical affliction amounts to, or gives rise to, a substantial limitation on a major life activity. The critical question in every case is what was the effect of the impairment on the life of the individual.") (citation omitted)); *Cole v. Illinois Dep't of Healthcare & Fam. Servs.*, 2024 WL 1119361, at *3 (C.D. Ill. Mar. 14, 2024) (dismissing claims where plaintiff did not set forth facts alleging his medical conditions substantially affect a major life activity); *Bob-Maunuel v. Chipotle Mexican Grill, Inc.*, 10 F. Supp. 3d 854, 882 (N.D. Ill. 2014) (granting summary judgment on disability discrimination claims premised on high blood pressure and kidney disease); *see also*

*Smith v. AMH 2014-1 Borrower, LLC*, 2024 WL 1460309, at *2 (11th Cir. Apr. 4, 2024) (finding that alleging Crohn's disease, without facts about how it affects plaintiff's major life activities, is insufficient to plead a disability); *Thomas v. New York City Dep't of Educ.*, 2022 WL 2236948, at *3 (2d Cir. June 22, 2022) (finding evidence of a torn tendon, without establishing whether that injury affected "major life activities," insufficient to establish disability); *Tucker v. Unitech Training Acad., Inc.*, 783 F. App'x 397, 400 (5th Cir. 2019) (finding that plaintiff failed to prove she was disabled when she alleged obesity, without showing how it substantially limited a major life activity).

Nor has Hunter alleged that she is regarded as having high blood pressure. 42 U.S.C. § 12102(3)(A) (noting an individual may be disabled against under the ADA if they are subjected to an adverse action because of a perceived impairment, regardless of its limitation on a major life activity); *see Bob-Maunuel*, 10 F. Supp. 3d at 882. For these reasons, Hunter has not pled facts sufficient to plausibly find her disabled under the ADA, a prerequisite to her disability discrimination and harassment claims (Counts I–III).

Regarding her ADA retaliation claim, however, Hunter must allege that (1) she engaged in a statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the employer's action. *Dickerson v. Bd. of Trs. of Cmty. Coll. Dist. No. 522*, 657 F.3d 595, 601 (7th Cir. 2011). Even if Hunter cannot allege that she is disabled under the ADA, she could still state a claim for retaliation if Defendants retaliated against her for "attempting to raise a good faith claim under the ADA." *Cassimy*, 461 F.3d at 938. Neither Defendant challenges Hunter's ADA retaliation claim for failure to state a claim, and rather challenge her failure to exhaust (which the Court rejected *infra* pp. 7–8) and

10

failure to allege she was disabled within the meaning of the ADA (which does not apply to ADA retaliation claim). Count IV thus stands.

### III. Racial Harassment

Hunter asserts disability and racial harassment under the ADA and Title VII (Counts III and VI). As the Court previously determined that Hunter failed to plead that she was disabled within the meaning of the ADA, *infra* pp. 7–9, the Court will solely analyze the sufficiency of Hunter's racial harassment claim. Nexus and Carl Buddig both move to dismiss Hunter's claim for racial harassment. (Dkt. 34 at 10; Dkt. 36 at 4, 9).

Under Title VII, employers cannot discriminate against employees because of their "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII, in addition to prohibiting discrimination that has direct economic consequences, "forbids employers from requiring people to work in a discriminatorily hostile or abusive environment." *Boss v. Castro*, 816 F.3d 910, 919–20 (7th Cir. 2016) (citing *Vance v. Ball State Univ.*, 570 U.S. 421, 427 (2013)). An employer faces liability for a supervisor's alleged harassment if it culminated in a "tangible employment action." *Trahanas v. Nw. Univ.*, 64 F.4th 842, 853 (7th Cir. 2023) (citation omitted). A tangible employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Vance*, 570 U.S. at 431). Hunter's alleges two tangible employment actions supporting her racial harassment claim: (1) a hostile work environment, and (2) constructive discharge, or termination. (Dkt. 40 at 8–9).

### a. Hostile Work Environment

To state a claim for hostile work environment, a "plaintiff must demonstrate that (1) she was subject to unwelcome harassment; (2) the harassment was based on disability or [race]; (3)

11

the harassment was sufficiently severe or pervasive, both subjectively and objectively, so as to alter the conditions of her employment and create a hostile or abusive atmosphere; and (4) there is a basis for employer liability." *Brooks v. Avanvez*, 39 F.4th 424, 441 (7th Cir. 2022) (citing *Mahran v. Advocate Christ Med. Ctr.*, 12 F.4th 708, 714–15 (7th Cir. 2021)); *see Milligan v. Bd. of Trustees of S. Ill. Univ.*, 686 F.3d 378, 383 (7th Cir. 2012).

To determine whether the conduct was objectively offensive and severe or pervasive, the Court analyzes the totality of the allegations, including "the severity of the allegedly discriminatory conduct, its frequency, whether it is physically threatening or humiliating or merely offensive, and whether it unreasonably interferes with an employee's work performance." *Gates v. Bd. of Educ. of the City of Chi.*, 916 F.3d 631, 636 (7th Cir. 2019); *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017). Lastly, an employer may be liable for a hostile work environment claim where the harasser is a supervisor, or the employer has been negligent either in discovering or remedying the harassment. *Clacks v. Kwik Trip, Inc.*, 2024 WL 3514772, at *3 (7th Cir. July 24, 2024) (citation omitted).

Here, Hunter fails to allege facts hinting at a work environment that was objectively offense and severe or pervasive under the *Gates* factors. In her First Amended Complaint, Hunter repeatedly pleads conclusory statements, such as that the racial harassment was "severe and pervasive" and subjectively and objectively offensive. (Dkt. 30 ¶¶ 118–20). To support a racially hostile work environment, Hunter alleges four instances: (1) Brenda "stared" at Hunter during a lunch break and "bullied" her out of the lunchroom; (2) Brenda treated Hispanic coworkers in a more "friendly and professional manner" than African American employees; (3) Brenda stated that "[s]omeone told me you didn't wash your hands. So you people don't wash your hands?"; and (4) Brenda "scream[ed]" at her when she attempted to use the bathroom. (*Id.* at ¶¶ 43–58).

12

Yet, these instances, without more, sound in the register of workplace slights that were "merely offensive." In fact, federal law "does not protect against petty slights, minor annoyances, and bad manners," *Boss*, 816 F.3d at 918, and "is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace," *Thompson v. Mem'l Hosp. of Carbondale*, 625 F.3d 394, 406 (7th Cir. 2010); *Brooks*, 39 F.4th at 441 ("[O]ccasional vulgar language, and coarse, rude, or boorish behavior will not amount to a hostile work environment."); *Adam v. Obama for Am.*, 210 F. Supp. 3d 979, 991 (N.D. Ill. 2016) (collecting cases of hostile workplace environments the Seventh Circuit found inactionable). Nor do Hunter's non-conclusory allegations provide any support to a plausible inference that this conduct interfered with her work performance. *Brooks*, 39 F.4th at 441 ("Insults, personal animosity, and juvenile behavior are insufficient evidence of a hostile work environment unless they are so pervasive or severe as to interfere with an employee's work performance."). Ultimately, "not every perceived unfairness in the workplace may be ascribed to discriminatory motivation because the complaining employee belongs to a racial minority." *Paschall*, 28 F.4th at 814 (citation omitted).

    b. **Constructive Discharge**

A constructive discharge also qualifies as an adverse employment action. *Wince v. CBRE, Inc.*, 66 F.4th 1033, 1043 (7th Cir. 2023). "To establish a claim for constructive discharge, a plaintiff must prove that unlawful discrimination made her working conditions so intolerable that a reasonable person would be forced to resign." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 789 (7th Cir. 2007) (citing *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)); *Wright v. Ill. Dep't of Children & Fam. Servs.*, 798 F.3d 513, 527 (7th Cir. 2015). Generally, "such cases require a plaintiff to show working conditions even more egregious than that required for a hostile work environment claim because employees are generally expected to remain employed while seeking

13

redress, thereby allowing an employer to address a situation before it causes the employee to quit." *Chapin v. Fort-Rohr Motors, Inc.*, 621 F.3d 673, 679 (7th Cir. 2010) (collecting cases).

Hunter aims this claim at Nexus, who assigned her to "undesirable" work locations after her termination with Carl Buddig. Ultimately, Hunter did not plead facts sufficient to plausibly state a claim for hostile work environment, let alone the higher standard for a constructive discharge. *Wright*, 798 F.3d at 527; *see also Adam*, 210 F. Supp. 3d at 990 ("A constructive discharge claim requires a showing of 'unbearable' working conditions; i.e., evidence of a hostile work environment that has grown so oppressive that the law recognizes it is appropriate for the plaintiff to quit."). In fact, Hunter pleads only that after Carl Buddig terminated her on January 18, 2024, Nexus assigned her that same day to "an undesirable location due to the travel required, and the type of work with the intent that Plaintiff would quit." (Dkt. 30 ¶ 66). Thus, Hunter alleges that on the day that she reported complaints to Nexus HR, and terminated from Carl Buddig, she was also reassigned by Nexus to an "undesirable location" and constructively discharged.

Hunter does not allege that she did quit Nexus, or any facts surrounding her reassignment, its connection to her race, or that it was "so intolerable that a reasonable person would be forced to resign." *Boumehdi*, 489 F.3d at 789; *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 728 (7th Cir. 2001) ("When an employee's pay, job title, and responsibilities remain the same, a change in the employee's 'working hours certainly does not rise to the level of an adverse employment action.'"). Hunter's barebones factual allegation does not support this theory of harassment against Nexus.

14

## CONCLUSION

The Court grants in part Defendant Nexus and Defendant Carl Buddig's [34] [35] motions to dismiss. Counts I is dismissed without prejudice as to Nexus; Counts II, III, and VI are dismissed without prejudice as to all Defendants; and Counts IV, V, VII, and VIII stand as to all Defendants.

_____
Virginia M. Kendall
United States District Judge

Date: October 5, 2024