THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHAKERAH HUNTER | ) | |
| | ) | |
| Plaintiff, | ) | No. 24 2529 |
| v. | ) | |
| | ) | Chief Judge Virginia M. Kendall |
| CARL BUDDIG AND COMPANY, and | ) | |
| NEXUS PAYROLL, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Pending before the Court is Defendants' Carl Buddig and Company, and Nexus Payroll, Inc.'s Motion to Dismiss. (Dkt. 55). Plaintiff Shakerah Hunter alleges in her five-count Second Amended Complaint that Carl Buddig and Nexus's conduct violated the Americans with Disabilities Act (ADA), 42 U.S.C. §1981, and Title VII of the 1964 Civil Rights Act. (Dkt. 46-1). Carl Buddig and Nexus move to dismiss Counts I and II of Hunter's Second Amended Complaint—the ADA discrimination and retaliation claims (Dkt. 55). For the following reasons, the Court denies Defendants' motion [55].

**BACKGROUND**

The following facts are taken from Hunter's Second Amended Complaint (Dkt. 46-1).[1] Nexus is a staffing services provider that hired Hunter to work for Carl Buddig at a food processing facility. Hunter worked for Nexus and Carl Buddig from November 1, 2023, to around January 18, 2024, when both Defendants terminated Hunter. Though Hunter checked in with Nexus employees each day, Carl Buddig employees supervised and gave Hunter daily assignments. Nexus was

---

[1] The Court assumes familiarity with facts of this case based on its October 5, 2024, Order, granting in part, Defendants' motion to dismiss Plaintiff's First Amended Complaint. (Dkt. 44).

1

responsible for paying Hunter, while Carl Buddig set Hunter's compensation rates. During her tenure at Carl Buddig, Hunter met or exceeded performance expectations.

Hunter has high blood pressure, which causes headaches, dizziness, chest pain, nausea, and vomiting. Without medication, Hunter experiences these symptoms at least once a week. When experiencing symptoms, Hunter's ability to stand, lift, bend, care for herself, sleep, and perform work is substantially limited. Hunter takes medication to treat the high blood pressure, which mitigates symptoms, but causes her to urinate frequently, resulting in many daily trips to the bathroom. Hunter informed Carl Buddig and Nexus of her condition, its symptoms, and the side effects of Hunter's medication. Because of Hunter's frequent urination, Hunter requested an accommodation to have better access to a bathroom.

Around January 18, 2024, Hunter's Carl Buddig supervisor reprimanded Hunter after Hunter requested to use the bathroom. The supervisor said the bathroom was "off limits" and "that there was always an issue with 'you people.' " Hunter's Carl Buddig supervisor prevented Hunter from using the bathroom closest to her work station. When Hunter brought the incident to the Nexus onsite manager's attention, the Nexus manager berated Hunter for not raising the issue directly with Nexus instead of the Carl Buddig supervisor. The Nexus supervisor prevented Hunter from complaining to Nexus's Human Resources, confiscated Hunter's badge, and sent her home. That day, Carl Buddig suspended and subsequently, terminated Hunter. Immediately after Hunter complained about Carl Buddig's alleged discrimination to the Nexus manager, Nexus also terminated Hunter.

Hunter filed an initial Complaint against Carl Buddig and Nexus alleging ADA and Title VII violations in March 2024. (Dkt. 55 at 1). Subsequently, Hunter amended her Complaint. (*Id*.)

The Court then granted Carl Buddig and Nexus's partial Motion to Dismiss. (Dkt. 44). Now, Carl Buddig and Nexus move to dismiss Hunter's Second Amended Complaint. (Dkt. 55).

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, the complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Kaminski v. Elite Staffing*, 23 F.4th 774, 776 (7th Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)). Specifically, "a plaintiff must allege 'enough facts to state a claim that is plausible on its face.' " *Allen v. Brown Advisory, LLC*, 41 F.4th 843, 850 (7th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Further, the moving party bears the burden of establishing the insufficiency of the plaintiff's allegations. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021).

## DISCUSSION

Carl Buddig and Nexus move to dismiss Counts I (ADA discrimination) and II (ADA retaliation) of Hunter's Second Amended Complaint. (Dkt. 55 at 4).

### I. ADA Discrimination (Count I)

Nexus and Carl Buddig argue that Hunter's Second Amended Complaint provides insufficient details to establish that Hunter qualifies as "disabled" under the ADA. (Dkt. 55 at 4,

6); 42 U.S.C. § 12102(1). Specifically, Carl Buddig and Nexus contend that Hunter's pleading relies on merely "having high blood pressure" without providing more details, which would qualify Hunter as disabled. *Powers v. USF Holland, Inc.*, 667 F.3d 815, 819 (7th Cir. 2011). Separately, Defendants argue—without caselaw to support their proposition—that because Hunter took medication to controls her symptoms that "it's not plausible that [Hunter] was experiencing the symptoms of high blood pressure to effect a major life activity" when she was employed by Carl Buddig and Nexus. (Dkt. 55 at 7).

To make a prima facie case of ADA discrimination, "a plaintiff must show that: (1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Roberts v. City of Chicago*, 817 F.3d 561, 565 (7th Cir. 2016); *see also Bruno v. Wells-Armstrong*, 93 F.4th 1049, 1053 (7th Cir. 2024) ("The ADA bars discrimination against a qualified person 'on the basis of disability.' " (citing 42 U.S.C. § 12112(a))); *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012) (explaining that "to succeed" on an ADA discrimination claim, "[plaintiff] must be disabled under the ADA . . . ."). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . . " 42 U.S.C. § 12102(1). A non-exhaustive list of "major life activities" includes sleeping, walking, breathing, communicating, working, or the operation of major bodily functions including immune system and bladder. 42 U.S.C. § 12102(2). Whether an impairment substantially limits a major life activity is " 'not meant to be a demanding standard,' and 'shall be construed broadly in favor of expansive coverage.' " *Frazier-Hill v. Chicago Transit Auth.*, 75 F.4th 797, 803 (7th Cir. 2023) (quoting 29 C.F.R. § 1630.2(j)(1)(i)); *see also DePaoli v. Abbott Labs.*, 140 F.3d 668, 672 (7th Cir. 1998)

4

(explaining that courts assess whether one qualifies as "disabled" under the ADA on a case-by-case basis).

While it is true that Hunter's claim cannot rest simply on having high blood pressure, Nexus and Carl Buddig's argument fails because Hunter's Second Amended Complaint goes much further than that. *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959, 962 (7th Cir. 1996) ("a finding of a disability 'is not necessarily based on the name or diagnosis of the impairment the person has.' " (quoting 29 C.F.R. § 1630.2(j))); *Fleishman*, 698 F.3d at 607 (citing *Burnett v. LFW Inc.*, 472 F.3d 471, 483 (7th Cir.2006)); (Dkt. 46-1, Exhibit A, Plaintiff's Second Amended Complaint). On the contrary, Hunter alleges that her high blood pressure "manifests in symptoms including but not limited to" headaches, dizziness, chest pain, nausea, and vomiting. (Dkt. 46-1 at 5). If Hunter does not take her medication, when Hunter's "blood pressure spikes," which can occur "on a weekly basis," she experiences all of these symptoms. (*Id.*) Furthermore, unlike in Hunter's First Amended Complaint, Hunter now claims that "[d]ue to her disability, [she] suffers substantial limitation to her ability to stand, lift, bend, care for herself, sleep, and perform work when experiencing symptoms." (Dkt. 46-1 at 5). Hunter also contends that the medication she takes to control high blood pressure causes frequent urination. (Dkt. 1 at 4); (Dkt. 30 at 5); (Dkt. 46-1 at 5).

These details animate Hunter's claim, demonstrating how Hunter's high blood pressure symptoms and medication side effects impair her life. Without medication, Hunter's blood pressure causes a long list of symptoms consistent with a physical impairment "that substantially limits one or more major life activities." 42 U.S.C. § 12102(1). Because Hunter takes medication to treat these symptoms, Hunter experiences frequent urination—a sign of an impaired, major bodily function. *See* 42 U.S.C. § 12102(2); *Kauffman v. Petersen Health Care VII, LLC*, 769 F.3d

5

958, 961 (7th Cir. 2014) (explaining that bladder problems can constitute a disability under the ADA). Accordingly, Hunter does not rest her ADA disability status merely on her high blood pressure diagnosis.

Nexus and Carl Buddig's other contention, that because Hunter's medication alleviates her symptoms, Hunter does not qualify as disabled, also lacks merit. (Dkt. 55 at 7). First, even if the medication does fully mitigate symptoms, Hunter's *medication itself* allegedly causes side effects—frequent urination—which independently impair "the operation of [a] major bodily function[]." 42 U.S.C. § 12102(2). The Seventh Circuit concluded in *Christian v. St. Anthony Med. Ctr., Inc.*, if a patient "undergo[es] a disabling treatment," which is "truly necessary, and not merely an attractive option" the treatment itself can qualify as "disabl[ing]" the plaintiff under the ADA. 117 F.3d 1051, 1052 (7th Cir. 1997); *see also Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 187 (3d Cir. 2010) (holding that "side effects from medical treatment may themselves constitute an impairment under the ADA . . . ."). Though Hunter does not provide records indicating whether medication is "truly necessary" to manage her high blood pressure, Hunter's description of the symptoms (i.e., weekly bouts of headaches, dizziness, chest pain, nausea, and vomiting) certainly suggest medication is necessary. (Dkt. 46-1 at 2). Liberally construing Hunter's Second Amended Complaint, as the Court is required to do, dismissing Hunter's claim on this ground would, therefore, be premature. *Frazier-Hill*, 75 F.4th at 803. Accordingly, based on the additional facts in Hunter's Second Amended Complaint, Hunter has established that she is disabled under the ADA.

Second, even if Hunter did not experience side effects causing frequent urination from her blood pressure medication, Hunter could still establish a disability. In *Gogos v. AMS Mech. Sys., Inc.*, the Seventh Circuit dealt with a similar issue and underscored that "when 'determin[ing]

6

whether an impairment substantially limits a major life activity[,] the ameliorative effects of mitigating measures such as . . . medication' are not relevant." 737 F.3d at 1173 (quoting 42 U.S.C. § 12102(4)(E)(i)(I)). Therefore, the fact that Hunter takes medication to alleviate symptoms of her high blood pressure is not relevant to the Court's examination into whether Hunter is "disabled."

Nexus and Carl Buddig do not make any arguments with respect to the second and third elements of an ADA discrimination claim (i.e., that Hunter is otherwise able to perform her job and that an adverse action was taken against Hunter because of her disability). (*See generally* Dkt. 55). Evaluating Hunter's Second Amended Complaint, Hunter alleges facts to establish these elements. Hunter claims she exceeded performance expectations. (Dkt. 46-1 at 6). Further, Hunter alleges that on the day the Carl Buddig supervisor prevented Hunter from using the closest bathroom, her Nexus supervisor reprimanded her. (*Id*. at 8). That same day, Carl Buddig terminated Hunter—a decision which Nexus later ratified. (*Id*.) Therefore, because Hunter established that she is disabled under the ADA and adequately alleged the other elements, Hunter has sufficiently made a prima facie ADA discrimination claim against Carl Buddig and Nexus.

Accordingly, the Court denies Nexus and Carl Buddig's Motion to Dismiss Hunter's ADA discrimination claim.

### II. ADA Retaliation (Count II)

Carl Buddig and Nexus also move to dismiss Hunter's ADA retaliation claim. (Dkt. 55 at 8). To establish a retaliation claim, Hunter " 'must demonstrate that she engaged in protected activity, that she suffered an adverse action, and that there is a causal connection between the two.' " *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018) (quoting *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 243 (7th Cir. 2018).[2] "Protected activities include

---

[2] While the ADA protects only "qualified individuals against discrimination, the statute protects *any* individual against retaliation. 42 U.S.C. § 122203(a) (emphasis added); *see Rodrigo*, 879 F.3d at 243

asserting one's rights under the Act either by seeking accommodation or by raising a claim of discrimination due to disability." *Rodrigo*, 879 F.3d at 243; *see Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 815 (7th Cir. 2015) Indirect evidence of retaliation includes: "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receiv[ing] better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Rowlands*, 901 F.3d at 802 (cleaned up).

Like Hunter's discrimination claim, Carl Buddig and Nexus argue that Hunter's retaliation claim must be dismissed for two distinct reasons. (Dkt. 55 at 8–9). First, Nexus and Carl Buddig argue that "[Hunter] does not allege that she informed anyone that she recently ingested her medication" and therefore, Carl Buddig and Nexus's terminations of Hunter could not have been in response to Hunter's frequent urination. (*Id.* at 8).

Hunter's Second Amended Complaint belies this claim. According to the Second Amended Complaint, when Hunter began working at Carl Buddig, Hunter informed the Carl Buddig Human Resources representative that she had a condition, which required her to urinate frequently; she requested Carl Buddig accommodate her by giving her access to a restroom. (Dkt. 46-1 at 5–6). Hunter also informed the Nexus manager of her condition, which required bathroom access. (*Id.* at 5). Hunter, therefore, put both Carl Buddig and Nexus on notice of her condition and requested accommodation. Moreover, contrary to Defendants' contention, nothing indicates that Hunter's frequent urination is an acute rather than cumulate effect of taking her medication. Therefore, whether Hunter "ingested her medication" on January 18, 2024, would be irrelevant to the Court's inquiry into the ADA retaliation claim. (Dkt. 55 at 8). Taken together, these facts undermine Nexus

and Carl Buddig's claim that Hunter's termination could not have had a "causal connection" to her accommodation request. *Rowlands*, 879 F.3d at 801.

Nexus and Carl Buddig's second argument—that Hunter's retaliation claim fails because Hunter was not prevented outright from using the restroom, but merely the "closest" restroom— also fails. (Dkt. 55 at 9). Hunter's claim is not based solely on Carl Buddig's manager denying Hunter's access to the closest restroom, despite the manager knowing Hunter was taking medication, which required her to use the bathroom often. Instead, Hunter's retaliation claim is based on a claim that (i) Carl Buddig *terminated* Hunter for requesting to use the closest bathroom and (ii) Nexus *terminated* Hunter after Hunter complained about the incident. (Dkt. 57 at 7). Thus, Hunter's claim appears to be predicated not on Carl Buddig denying her right to use the closest bathroom, but on Carl Buddig and Nexus terminating Hunter for requesting to use that bathroom. (*See* Dkt. 46-1 at 6–9).

In short, based on Hunter's Second Amended Complaint, it is facially plausible that Nexus and Carl Buddig terminated Hunter because she engaged in a protected activity. (Dkt. 46-1). Though Hunter provides no direct evidence of retaliation, under the mosaic approach, "a retaliation case can 'be made by assembling a number of pieces of evidence none meaningful in itself, consistent with the proposition of statistical theory that a number of observations each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction.' *Coleman v. Donahoe*, 667 F.3d 835, 862 (7th Cir. 2012) (quoting *Cole v. Illinois*, 562 F.3d 812, 815 n. 2 (7th Cir. 2009).

Hunter offers sufficient evidence to make such a showing. With respect to Carl Buddig, after Hunter engaged in a protected activity by attempting to use the closest restroom. (*Id*. at 8). The onsite manager prevented Hunter from using the closest restroom calling it "off limits." (*Id*.)

9

He reprimanded Hunter saying "you people" always cause issues. (*Id*. at 7). That day, Carl Buddig suspended, and later terminated Hunter. (*Id*.) With respect to Nexus, Hunter reported the incident to an onsite Nexus manager ("a protected activity") who, according to Hunter's complaint, "berated" Hunter for not reporting the alleged discrimination sooner. (*Id*. at 6); *Rowlands*, 901 F.3d at 801. Soon after, Nexus terminated Hunter as well. (*Id*. at 9). Taking these facts as true, Hunter has sufficiently alleged an ADA retaliation claim against each former employer.

Accordingly, Nexus and Carl Buddig's Motion to Dismiss Hunter's ADA retaliation claim is denied.

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss [55] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: January 31, 2025